**UNITED STATES of America DEPARTMENT OF THE TREASURY Internal Revenue Service, and Commonwealth of Massachusetts Department of Revenue, Appellant,**

v.

**Robert L. GOSSELIN, Appellee.**

**No. Civ.A. 99–40176–PBS.**

United States District Court,
D. Massachusetts.

July 31, 2000.

Robert F. Casey, Jr., Robert F. Casey, Jr. P.C., Harvard, MA, for Robert L. Gosselin, debtor.

James L. O'Connor, Donald J. Evans, Department of Revenue, Litigation Bureau, Boston, MA, for Commonwealth of Massachusetts Department of Revenue, appellant.

Robert F. Casey, Jr., Robert F. Casey, Jr. P.C., Harvard, MA, for Robert L. Gosselin, appellee.

## MEMORANDUM AND ORDER

SARIS, District Judge.

Brandishing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 57, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) as its banner, appellant, the Commissioner of Revenue of the Commonwealth of Massachusetts ("the Commonwealth") challenges the decision of the Bankruptcy Court (Queenan, J.) denying its motion to dismiss for lack of jurisdiction under the Eleventh Amendment and discharging appellee's tax liability to the Commonwealth. Appellee argues that the Bankruptcy Court had jurisdiction because Congress abrogated the state's immunity from suit when it enacted section 106 of the Bankruptcy Code. *See* 11 U.S.C. § 106(a). The sole issue on appeal is whether Congress had the authority under the Bankruptcy Clause, U.S. Const. art. 1, § 8, cl. 4 to abrogate sovereign immunity.

After hearing, and a review of the record, the Court *REVERSES* the Bankruptcy Court's order allowing summary judgment for appellee and *ALLOWS* appellant's motion to dismiss.

### I. *FACTS*

The appellee filed a no-asset petition for Chapter 7 bankruptcy on November 3, 1998. The Commonwealth did not file a proof of claim or participate in the proceeding. A month later, on December 3, 1998, the appellee filed a complaint seeking to discharge income tax due the Commonwealth. A complaint and summons were served on the Commonwealth.

On February 24, 1999, the Commonwealth filed a motion to dismiss appellees' adversary proceeding, arguing that since the Department of Revenue did not consent to the suit (or waive such consent by filing a proof of claim in this case), under the Eleventh Amendment, the Bankruptcy Court did not have subject matter jurisdiction to hear the claim. After hearing on April 21, 1999, the Bankruptcy Court, citing *Virginia v. Collins (In re Collins)*, 173 F.3d 924 (4th Cir.1999), denied the Commonwealth's Motion to Dismiss on July 1, 1999. Soon after, the Commonwealth filed an answer to the complaint. It continued to assert that the court did not have subject matter jurisdiction, and that under Section 523(a)(1)(C) of the Bankruptcy Code, some or all of debtor's tax liability was excepted because knew or should have known of his duty to file tax returns and willfully attempted to evade or defeat the tax.

On July 19, 1999, the appellee filed a motion for Summary Judgment, which the Commonwealth opposed. The Bankruptcy Court granted the motion for Summary Judgment on August 31, 1999. The Commonwealth filed a timely notice of appeal.

## II. *DISCUSSION*

■ The only issue on appeal is whether Congress had the authority to abrogate the state's immunity from suit under the Eleventh Amendment when it enacted section 106 of the Bankruptcy Code. On an appeal from bankruptcy court decisions, conclusions of law are reviewed *de novo*. *See* Fed.Bankr.R. 8013; *In re GSF Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991).

Entitled "Waiver of Sovereign Immunity," section 106 provides: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [section 523]." *See* 11 U.S.C. § 106(a). Section 523 deals with the ability to discharge state taxes.

■ The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Amendment prohibits only suits against states by citizens of other states, the Supreme Court has held that it also bars suits against the state by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The seminal case on the constitutional limits on congressional power to abrogate a state's right to sovereign immunity is the *Seminole* case, which reaffirmed century old case law that suits against unconsenting states "were not contemplated by the Constitution when establishing the judicial power of the United States." *See Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court stated the two-pronged test as follows: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity' [citation omitted]; and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. 1114 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). Regarding the first inquiry, the Court held that "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Id.*

Turning to the second part of the test, the Court focused on one question: "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Id.* at 59, 116 S.Ct. 1114. While reaffirming that section 5 of the Fourteenth Amendment provided

the requisite authority for abrogation of state immunity to suit by a private party, *see id.*, the court overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) in which a plurality had found that "the Interstate Commerce Clause, Art. I, § 8, cl. 3, granted Congress the power to abrogate state sovereign immunity." *Id.* The Court held that:

> Even when the Constitution vests in Congress law-making authority over a particular area, the Eleventh Amendment prevents Congressional authorization of suits by private parties against unconsenting states. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Id.* at 72–73, 116 S.Ct. 1114.

The Court also mentioned a narrow exception to the Eleventh Amendment's guarantee of state immunity carved out by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Court there found "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" *Seminole Tribe*, 517 U.S. at 73, 116 S.Ct. 1114.

The impact of *Seminole Tribe* on bankruptcy law was one main focus of the debate. In his dissenting opinion, Justice Stevens lamented: "[The majority opinion] prevents Congress from providing a federal forum for a broad range of actions against States from those sounding in copyright and patent law, to those concerning bankruptcy, environmental law, and the regulation of our vast economy." *Id.* at 77, 116 S.Ct. 1114. He notes: "As federal courts have exclusive jurisdiction over cases arising under these federal laws, the majority's conclusion that the

Eleventh Amendment shields states from being sued under them in federal court suggests that persons harmed by State violations of federal copyright, bankruptcy and antitrust laws have no remedy." *Id.* at 77 n. 1, 116 S.Ct. 1114.

The majority, in a footnote, responded in two ways. First, it pointed out that "an individual may obtain injunctive relief under *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)] in order to remedy a state officer's ongoing violation of federal law." *Id.* at 73 n. 16, 116 S.Ct. 1114. Second, without supporting authority, it stated: "Although the copyright and bankruptcy laws have existed practically since our Nation's inception ... there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States." *Id.* at 73 n. 16, 116 S.Ct. 1114.

■ Applying the two-part test from *Seminole Tribe* to a bankruptcy setting, most courts have concluded that section 106 is unconstitutional. *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.)*, 119 F.3d 1140 (4th Cir.1997) is directly on point. There, a trustee for the estate of a Chapter 7 debtor brought an adversary proceeding against the State of Maryland to avoid the debtor's income tax payment as a preferential transfer. Although it concluded that Congress made its intent to abrogate very clear, the Fourth Circuit held, "Because the holding in *Seminole* extended to restrict all federal jurisdiction over the states based on Article I powers, we hold in this case that Congress has no authority under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, to abrogate state sovereign immunity in federal courts." *Id.* at 1145. It added, "[E]ven when the Constitution vests in Congress complete lawmaking authority over a particular area (i.e., bankruptcy law), the Eleventh Amendment prevents congressional authorization of

suits by private parties against unconsenting States." *Id.* The court rejected out-of-hand the argument that section 106 was enacted pursuant to the Fourteenth Amendment. *See id.* at 1146; *see also State of Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 787 (4th Cir.1997) (holding that the Eleventh Amendment did not prevent the bankruptcy court from confirming a plan of reorganization binding on the state).

The other circuits reached the same conclusion. *See Sacred Heart Hosp. of Norristown v. Commonwealth of Pennsylvania, Dept. of Public Welfare (In re Sacred Heart Hosp. of Norristown),* 133 F.3d 237, 243 (3rd Cir.1998) (dismissing an adversary proceeding brought by a Chapter 11 debtor hospital against the Pennsylvania Department of Public Welfare, seeking monies allegedly due for services rendered); *Dept. of Transp. and Dev. v. PNL Asset Management Co. (In re Fernandez),* 123 F.3d 241, 244–245 (5th Cir.1997); *Mitchell v. Franchise Tax Board, State of California (In re Mitchell),* 209 F.3d 1111, 1119 (9th Cir.2000). Many bankruptcy courts have joined the post-Seminole chorus in declaring section 106(a) invalid. *See, e.g., Elias v. California Franchise Tax Board (In re Elias),* 218 B.R. 80, 87 (9th Cir. BAP 1998); *DeAngelis v. Lasky (In re DeAngelis),* 239 B.R. 426, 430 (Bankr.D. Mass.1999) (Kenner, C.J.). *But see Wyoming Dept. of Transp. v. Straight (In re Straight),* 209 B.R. 540, 548–55 (D.Wyo.1997) (holding Congress' abrogation of state immunity under section 106 constitutional as valid under the Fourteenth Amendment), *aff'd on other grounds,* 143 F.3d 1387 (10th Cir.1998) (affirming on basis of waiver of state immunity); *Burke v. State of Georgia Dept. of Revenue (In re Burke),* 203 B.R. 493, 497 (Bankr.S.D.Ga.1996) (finding section 106 constitutional under the Privileges and Immunities Clause of the Fourteenth Amendment), *aff'd on other grounds,* 146

F.3d 1313 (11th Cir.1998) (declining to address abrogation).

Although the First Circuit has not yet addressed this issue, I join those courts which have concluded that the abrogation of the state's Eleventh Amendment immunity in section 106 of the Bankruptcy Code is invalid because, notwithstanding Congress' clear intent to abrogate the States' sovereign immunity, the Bankruptcy Clause, Art. 1, § 8 cl. 4 does not grant Congress that power. The Bankruptcy Clause confers on Congress the power "[t]o establish ... uniform laws on the subject of Bankruptcy throughout the United States." However, *Seminole* instructed that even in areas where the constitution vests complete law-making authority in Congress, like bankruptcy, the Eleventh Amendment precludes suits by private citizens in federal court. The give-and-take in *Seminole* suggests that the majority was well aware of the implications of this holding in bankruptcy. *See Mercado v. Commonwealth of Puerto Rico,* 214 F.3d 34, 37–38 (1st Cir.2000) ("In short, *Seminole Tribe* signifies that when Article I is the only applicable wellspring of congressional authority, the Eleventh Amendment precludes Congress from allowing individuals to sue non-consenting states in federal court"). I also agree with those courts which concluded that there was no evidence that Section 106 was enacted pursuant to § 5 of the Fourteenth Amendment. *See e.g., Fernandez,* 123 F.3d at 244–46; *Creative Goldsmiths,* 119 F.3d at 1146.

In denying the Commonwealth's motion to dismiss, Judge Queenan relied (without opinion) on *Virginia v. Collins (In re Collins),* 173 F.3d 924 (4th Cir.1999). The *Collins* case involved Chapter 7 debtors who received a discharge in bankruptcy court. The Commonwealth of Virginia sought to collect on pre-bankruptcy judgments entered for forfeited bail bonds. The debtors moved to reopen their Chap-

ter 7 case for a determination of dischargeability of any pre-bankruptcy judgments owed to the state. The Fourth Circuit held: "An adversary proceeding, with its compulsory process, is not required to reopen a case because the bankruptcy court's power to reopen flows from its jurisdiction over debtors and their estates." *Id.* at 929. Because the state "was not named as a defendant, was not served with process, and was not compelled to appear in Bankruptcy Court," *id.*, the motion to reopen was not a suit against "one of the United States" within the meaning of the Eleventh Amendment. *Id.*

In this case, however, appellee did name the Commonwealth of Massachusetts as a defendant, and did serve the Commonwealth with summons compelling it to appear and answer the debtor's motion. Accordingly, this case is governed by *Creative Goldsmiths,* not *Collins.*

## III. *ORDER*

The Court **REVERSES** the Bankruptcy Court's order allowing summary judgment for appellee and **REVERSES** the order denying appellant's Motion to Dismiss.