**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-1728

UNITED MUSICAL INSTRUMENTS USA, INC.,

Plaintiff, Appellee,

v.

GORDON MUSIC, INC. d/b/a GORDON LASALLE MUSIC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Charles B. Swartwood, III, U.S. Magistrate Judge]

Before

Howard, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

Stephen Gordon, for appellant.
Michael R. Byrne, with whom Melick Porter & Shea, LLP was on
brief, for appellee.

April 11, 2006

**Per Curiam**.   Defendant-appellant Gordon Music, Inc. ("Gordon") appeals from a judgment entered after a bench trial in favor of plaintiff-appellee United Musical Instruments USA, Inc. ("United").  We affirm.

Only the briefest summary of the facts is warranted.  In 1998, United, a manufacturer and distributor of musical instruments, entered into a written agreement with Gordon, a seller and lessor of musical instruments, by which Gordon agreed to be a retail dealer of United's merchandise.  All went well until 2000, when United began experiencing difficulty collecting amounts due from Gordon.   Late charges accumulated, the possibility of returning merchandise for credit was unsuccessfully explored, sales to Gordon ceased, and the Gordon account was placed in collection.

In 2002, United filed a diversity action alleging breach of contract (Count 1), violation of the Massachusetts Commercial Code (Count 2), and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count 3).  Gordon raised a chapter 93A counterclaim, which alleged that United's practice of giving  larger discounts than Gordon received to a competing retail dealer constituted an unfair and deceptive trade practice.  At a bench trial, United's comptroller (Thomas Lawdenski), United's regional sales representative (Joseph Saravo), and Gordon's president (Mark Gordon) testified.   United also presented an extensive record of invoices (paid, unpaid, and partially paid),

-2-

shipping confirmations, credit memorandums, and payment records. The presentation was rather one-sided; Mark Gordon admitted that Gordon's relevant computer records had been automatically "purged" and testified that other relevant records (including such basic items as cancelled checks) had been lost or discarded. Gordon's basic defenses were that the parties' contract did not satisfy the Statute of Frauds (no quantity of merchandise specified) and that Gordon did not order or receive the disputed merchandise. The court found in favor of United on counts one and two and awarded judgment in the amount of $259,148.16 (consisting of the amount of the unpaid invoices, finance charges, and prejudgment interest). The court rejected both sides' chapter 93A claims.

On appeal, Gordon claims that the district court made three errors: (1) holding that recovery was not barred by the Statute of Frauds; (2) finding that the disputed goods and invoices were actually sent by United and received by Gordon; and (3) dismissing Gordon's chapter 93A counterclaim. In assessing the results of a bench trial, we review the district court's findings of fact for clear error and its legal conclusions de novo. See Rational Software Corp. v. Sterling Corp., 393 F.3d 276, 276 (1st Cir. 2005).

We begin with the Statute of Frauds. The district court concluded that the dealer agreement, confidential dealer information memorandum, and the invoices collectively satisfied the

-3-

writing requirement. Gordon did not challenge this legal conclusion, even tangentially, until its reply brief.[1] This is too late. See In re Gosselin, 276 F.3d 70, 72 (1st Cir. 2002)(arguments not raised in primary brief are waived). Thus, Gordon's only surviving challenge to this holding is a factual one -- whether the invoices were actually sent and received -- which duplicates Gordon's second issue on appeal, which we address next.

Lawdenski and Saravo testified about how orders were processed, goods shipped, and invoices generated and sent. Saravo, who had serviced the Gordon account, also testified that Gordon had not complained about being billed for merchandise it had not ordered or received. As noted above, United also presented abundant documentary evidence. Significantly, the invoices that Gordon had paid had been processed and documented in an identical manner to the invoices Gordon did not pay. Against this evidence, Gordon offered little. The district court expressed doubt about Mark Gordon's credibility and specifically noted Gordon's "sloppy and poor business practices." Mark Gordon also repeatedly conceded that he could not tell if the disputed invoices were valid or not, and he undermined Gordon's contention that merchandise had not been

---

[1]Gordon's arguments were primarily directed to the court's alternative holdings on the Statute of Frauds issue (e.g., whether the dealer agreement could be considered a requirements contract and the effect of course of dealing). In light of the failure to contest the court's primary holding, Gordon's presentation on the alternative holdings is irrelevant. Cf. In re Miles, 436 F.3d 291, 294 (1st Cir. 2006).

delivered with his testimony that he had sought to return a significant quantity of United's merchandise for credit. On this record, the district court's finding that the invoices and merchandise were sent by United and received by Gordon is not clearly erroneous. Cf. Narragansett Indian Tribe v. Warwick Sewer Auth., 334 F.3d 161, 168 (1st Cir. 2003)(testimony that documents were properly mailed with return addresses and not returned gives rise to presumption that documents were received).

Gordon's chapter 93A claim also merits little discussion. In presenting this claim, Gordon focused on whether United had engaged in an unfair or deceptive practice in granting a competing dealer a larger discount. But, in addition to showing an unfair or deceptive act, Gordon also had the burden of showing that it sustained a loss of tangible property or money as a result of the act. See Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998)(construing chapter 93A). Since Gordon does not challenge the district court's conclusion that it had failed to prove damages,[2] Gordon could not prevail on this claim. Cf. Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 71 (1st Cir. 2005)(failure to show damages defeats conversion claim).

**Affirmed.**

---

[2]Nor could Gordon make such a challenge, as the only evidence on this point in the record is Mark Gordon's concession on the witness stand that he could not prove any loss of any sort due to United's alleged wrongful conduct.

-5-